# 13-15742

# United States Court of Appeals
## for the
# Ninth Circuit

DONALD TURNER, on Behalf of the Davis New York Venture Fund,

*Plaintiff-Appellant,*

– v. –

DAVIS SELECTED ADVISORS, LP and DAVIS DISTRIBUTORS, LLC,

*Defendants-Appellees.*

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA,
*No. 4:08-cv-00421-AWT      Honorable A. Wallace Tashima*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

FRANCIS JOSEPH BALINT, JR., ESQ.
BONNETT FAIRBOURN FRIEDMAN
   & BALINT PC
2325 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Tel.:  (602) 274-1100
Fax:  (602) 274-1199

DANIEL W. KRASNER, ESQ.
ROBERT B. WEINTRAUB, ESQ.
WOLF HALDENSTEIN ADLER FREEMAN
   & HERZ LLP
270 Madison Avenue
New York, New York 10016
Tel.:  (212) 545-4600
Fax:  (212) 545-4653

*Attorneys for Plaintiff-Appellant Donald Turner,
on Behalf of the Davis New York Venture Fund*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................ i

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................- 1 -

I.   DEFENDANTS MISREPRESENT THE DECISIONAL LAW
     AND THE PLEADINGS' ALLEGATIONS ...............................................- 1 -

  A.  Jelinek's "Persuasive Value" Supports The Conclusion That
      The District Court Erred In Granting Dismissal And Abused
      Its Discretion In Denying The Rule 59(e)/15 Motion ...............................- 1 -

  B.  Both the AC and SAC Allege the Fund Consistently Underperformed,
      for Three and Six Year Periods, Comparable Active Funds, Index
      Funds and the S&P 500, and Charged Much Higher Fees When
      Measured Against Hundreds of Funds ......................................................- 4 -

  C.  Defendants Argument that the AC and the SAC Each Do Not
      Compare the Fund to a Sufficient Number of Funds Is Simply
      Wrong; the AC and the SAC Each Compare the Fund to As
      Many As 138 Other Stock Funds ...............................................................- 6 -

  D.  The District Court's Refusal to Compare the Fund With
      Vanguard's Actively-Managed Stock Funds Constituted
      Both Error as a Matter of Law and an Abuse of Discretion.......................- 9 -

  E.  Defendants' Analysis of the Dodge & Cox Stock Fund
      Is Fundamentally Flawed..........................................................................- 10 -

  F.  Defendants' Statement that Sophisticated Investors Pay the
      Same Advisory Fee Is a Straw Man, and Misstates Plaintiff's Case .......- 11 -

  G.  Defendants' Repeated Citation to the Fund's Cheaper
      Front-Load Charges Is Irrelevant Because Front-Load
      Sales Charges Are Not Advisory or 12b-1 Fees.......................................- 11 -

H. The Extraordinary Growth in the Fund Shortly Before
2006 Created Diseconomies of Scale that Undermined
the Fund's Ability to Obtain Even Average Returns ...............................- 12 -

I. The Fee Structure of Comparable Funds Is Much Lower
Than the Fund's Fee Structure................................................................- 13 -

J. The Board Reduced the Advisory Fee By Less
Than One-Half of One Percent Just Two Months
After the AC Was Filed ...........................................................................- 14 -

K. Defendants Ignore Virtually Every Lower Court Decision
Denying Dismissal of a §36(b) Claim; Misrepresent to This
Court All But One of the Cases They Cite as Being Post
*Iqbal/Twombly*, and Ignore Plaintiff's Post *Iqbal/Twombly* Decisions....- 15 -

II. THE DISTRICT COURT'S DENIAL OF THE RULE 59(e)
MOTION WAS AN ABUSE OF DISCRETION .......................................- 16 -

A. Defendants Misrepresent the Legal Standard for a Rule 59(e)
Motion, Ignoring the "Manifest Injustice" Standard ...............................- 17 -

B. There Was No Delay, and Certainly No Delay
That Prejudiced Defendants.....................................................................- 20 -

C. None of the Morningstar Articles Are Before This Court;
Not All Were Contained in the Judicial Notice Motion and
the District Court Granted that Motion Only in Part and
Conditionally, and Defendants Did Not Meet the Conditions .................- 23 -

III. DEFENDANTS' ARGUMENTS ALLEGING
SO-CALLED ALTERNATIVE GROUNDS FOR
AFFIRMANCE ARE NOT BEFORE THIS COURT ................................- 26 -

IV. DEFENDANTS' STANDING ARGUMENT
SHOULD BE REJECTED ..........................................................................- 28 -

V. CONCLUSION ..........................................................................................- 30 -

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Allstate Insurance Co. v. Herron*,
   634 F.3d 1101 (9th Cir. 2011) .............................................................17

*In re American Mutual Funds Fee Litigation,*
   Case No. CV 04-5593 GAF (RNBx),
   2009 U.S. Dist. LEXIS 120597 (C.D. Cal. Dec. 28, 2009) ...........................12, 29

*Baker v. Barnhart,*
   457 F.3d 882 (8th Cir. 2006) ..............................................................26

*In re Bear Stearns Companies, Inc. Securities,*
*Derivative and ERISA Litigation*,
   08 MDL 1963, No. 07 Civ. 10453,
   2011 U.S. Dist. LEXIS 103061 (S.D.N.Y. Sept. 6, 2011) ..................................18

*Brecher v. Citigroup Inc.*,
   No. 09 Civ 7359 (SHS),
   2011 U.S. Dist. LEXIS 131104 (S.D.N.Y. Nov. 14, 2011)................................18

*Chappel v. Laboratory Corp. of America*,
   232 F.3d 719 (9th Cir. 2000) .......................................................17, 18

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,*
   No. 12-4355-cv,
   2014 U.S. App. LEXIS 8533 (2d Cir. May 6, 2014)...........................................21

*Curran v. Principal Management Corp., LLC*,
   No. 09 Civ. 433,
   2010 U.S. Dist. LEXIS 83730 (S. D. Iowa June 8, 2010) ..............................16, 24

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ....................................................17, 18

*Forsythe v. Sun Life Fin., Inc.,*
417 F. Supp. 2d 100 (D. Mass. 2006) .......................................................3

*Gartenberg v. Merrill Lynch Asset Management, Inc.*,
  694 F.2d 923 (2d Cir. 1982), *cert. denied*,
  461 U.S. 906 (1983) ..................................................................................16, 19

*Gollust v. Mendell*,
  501 U.S. 115 (1991) ...............................................................................29

*Glanton v. AdvancePCS, Inc.,*
  465 F.3d 1123 (9th Cir. 2006) ...............................................................29

*Great Basin Mine Watch v. Hankins*,
  456 F.3d 955 (9th Cir. 2006) .................................................................26

*Harris v. Amgen*,
  573 F.3d 728 (9th Cir. 2009) .................................................................18

*Howard v. Everex Systems, Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ...............................................................18

*Jelinek v. Capital Research & Management Co.*,
  448 F. App'x 716 (9th Cir. 2011) ..................................................*passim*

*Jones v. Harris Associates L.P.*,
  559 U.S. 335 (2010) ......................................................................*passim*

*Kasilag v. Hartford Investment Financial Services, LLC,*
  Civ. No. 11-1083 (RMB/KMW),
  2012 U.S. Dist. LEXIS 178234 (D.N.J. Dec. 17, 2012) .......................29

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .................................................................26

*Metzler Investment GMBH v. Corinthian Colleges, Inc.,*
  540 F.3d 1049 (9th Cir. 2008) ...............................................................22

*McKesson Corp. v. Health Robotics, S.R.L.,*
  No. C-11-00728,
  2011 U.S. Dist. LEXIS 147476 (N.D. Cal. Dec. 22, 2011)..............17, 18

*National Surety Corp. v. Stargem Holland, B.V.,*
   No. 89-15573,
   1991 U.S. App. LEXIS 23196 (9th Cir. Oct. 1, 1991) .........................................27

*Peterson v. Miranda,*
   2:11-cv-01919,
   2012 U.S. Dist. LEXIS 149192 (D. Nev. Oct. 17, 2012),
   *motion to amend granted,* 2013 U.S. Dist. LEXIS 79029
   (D. Nev. June 4, 2013) ...........................................................................17, 18, 20

*Pfeiffer v. Bjurman, Barry & Associates*,
   No. 03 Civ. 9741,
   2004 U.S. Dist. LEXIS 16924 (S.D.N.Y. Aug. 27, 2004).....................................3

*Reso v. Artisan Partners Ltd. Partnership,*
   11-cv-873-JPS,
   2011 U.S. Dist. LEXIS 133526 (E.D. Wis. Nov. 18, 2011)...........................15, 16

*S.E.C. v. Burns,*
   614 F. Supp. 1360 (S.D. Cal. 1985).....................................................................17

*Siemers v. Wells Fargo & Co.*,
   No. 05-04518,
   2006 U.S. Dist. LEXIS 60858 (N.D. Cal. Aug. 14, 2006) ........................3, 10, 14

*United States v. Daychild*,
   357 F.3d 1082 (9th Cir. 2004) ...............................................................................2

*United States v. Ritchie,*
   342 F3d 903 (9th Cir. 2003) .................................................................................26

*Wicks v. Putnam Investment Management, LLP*,
   No. 04-10988-GAO,
   2005 U.S. Dist. LEXIS 4892 (D. Mass Mar. 28, 2005).........................................3

*Yameen v. Eaton Vance Distributors, Inc.*,
   394 F. Supp. 2d 350 (D. Mass. 2005)..............................................................12, 27

## STATUTES & RULES

17 C.F.R. § 270.12b-1 ("Rule 12b-1") ............................................................*passim*

Arizona Civil Local Rule 15.1 ..................................................................22

Federal Rules of Appellate Procedure
  Rule 10(c)....................................................................................23
  Rule 30(a)(2)................................................................................25
  Rule 32.1 ................................................................................1, 2

Federal Rules of Civil Procedure
  Rule 59(e)................................................................................*passim*

Federal Rule of Evidence 201 ..................................................................25

Investment Company Act of 1940 ("ICA")
  § 12....................................................................................2, 3
  § 36(b) ............................................................................... *passim*
  § 48(a) .................................................................................30

Ninth Circuit Rule 30-1.5 ......................................................................25

Ninth Circuit Rule 36-3 ..........................................................................1

## OTHER AUTHORITIES

Brief for John C. Bogle as *Amicus Curiae*
  in Support of Petitioners in *Jones*
(filed June 15, 2009) (*available at* americanbar.org) ...............................................9

/751549

## INTRODUCTION

Plaintiff submits this reply brief in support of his appeal.

Defendants make numerous misleading arguments, each of which is applicable to both the AC and the SAC.  Defendants misrepresent the case law, and misrepresent or ignore the facts alleged in the AC and the additional facts alleged in the SAC.  Both pleadings sufficiently state claims that the advisory and 12b-1 fees each were unlawful and could not have been the result of arms-length bargaining.

## I.  DEFENDANTS MISREPRESENT THE DECISIONAL LAW AND THE PLEADINGS' ALLEGATIONS

### A.  Jelinek's "Persuasive Value" Supports The Conclusion That The District Court Erred In Granting Dismissal And Abused Its Discretion In Denying The Rule 59(e)/15 Motion

Defendants incorrectly argue that this Circuit's decision in *Jelinek v. Capital Research & Management Co.*, 448 F. App'x 716 (9th Cir. 2011):  (1) carries no precedential force and cannot even be cited and relied upon, because it is an unpublished decision; (2) rejects as a matter of law the claim Plaintiff asserts; and (3) does not relate to any claim alleged by Plaintiff in the AC or SAC.  Defendants' Appeal Brief, DBr.33.  Defendants are wrong in all respects.

First, Defendants ignore Ninth Circuit Rule 36-3, that, in accordance with Fed. R. App. P. 32.1, "Citing Judicial Dispositions," expressly permits any party to cite to unpublished dispositions and orders issued on or after January 1, 2007.

While such rulings are not binding precedent, they may be cited by a party for their "persuasive value."  Advisory Committee Notes, 2006 Adoption.  Defendants' cite *U.S. v. Daychild*, DBr.33, which was decided two years before the 2006 adoption of FRAP 32.1.

Second, while the *Jelinek* district court found for the defendant in that case, it did so only after extensive discovery, the denial of summary judgment and a bench trial.  448 F. App'x at 717.  It did not do so as a threshold matter of law, as Defendants seek here, where there have been no proceedings beyond the motion to dismiss, and where the discoverable facts are not before the Court.

Third, Defendants' assertion that the AC and SAC never alleged an "improper purpose" claim is untrue.  Both the AC and SAC allege that the 12b-1 fees were used for an improper purpose.  *Jelinek* did not require that the improper purpose be an unlawful purpose, merely that the purpose be improper under §36(b).

The AC and SAC allege that the overwhelming majority of services paid for by the Fund's 12b-1 service fee are post-sale shareholder services for current shareholders.  Plaintiff's Opening Appeal Brief, PBr.43-44.  RE404, 407-08, 443-44, RE84.

The portion of the 12b-1 fee that pays for post-sale shareholder services cannot possibly be "primarily intended" to sell Fund shares as required under ICA

§12.  The Rule states, for example, that prospectuses can be mailed to "other than **current** shareholders"  RE443n.3 (emph. added).  Hence, these service fees are excessive and disproportionate because they are for an "improper purpose." *Jelinek*, 448 F. App'x at 718, citing *Forsythe v. Sun Life Fin., Inc.,* 417 F. Supp. 2d 100, 115-16 (D. Mass. 2006); *Siemers v. Wells Fargo & Co.*, 2006 U.S. Dist. LEXIS 60858 (N.D. Cal. Aug. 14, 2006); *Wicks v. Putnam Inv. Mgmt., LLP*, 2005 U.S. Dist. LEXIS 4892, at *3 (D. Mass. Mar. 28, 2005); *Pfeiffer v. Bjurman, Barry & Assocs.*, 2004 U.S. Dist. LEXIS 16924, at *10-*11, *15 (S.D.N.Y. Aug. 27, 2004).

Furthermore, the Fund paid broker-dealers for these post-sale shareholder services despite the fact that the broker-dealers were legally obligated to provide many of these operational/compliance services to their customers.  PBr.43-44. RE407-08, RE84.

Where others are legally required to provide post-sale services to customers (regardless of whether the Fund pays the broker-dealer for the service), as broker-dealers are legally required here to provide these services, the hundreds of millions of dollars in 12b-1 service fees are for an "improper purpose."  *Jelinek*, 448 F. App'x at 718.

Hence, Fund Board approval requiring the Fund to make payments not primarily intended to result in the sale of Fund shares or to pay for services that

others are legally obligated to provide, do not "carr[y] the earmarks of an arm's length bargain."  *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 347 (2010).

The District Court held in its Memorandum Order ("MO") that the improper "use" of 12b-1 fees did not, as a matter of law, state a claim.  RE20-21. This was an error of law.[1]

> **B.     Both the AC and SAC Allege the Fund Consistently Underperformed, for Three and Six Year Periods, Comparable Active Funds, Index Funds and the S&P 500, and Charged Much Higher Fees When Measured Against Hundreds of Funds**

Defendants falsely assert that the complaints merely allege underperformance for relatively short time periods.  DBr.19.

The AC and the SAC allege that the Fund's advisory fee and 12b-1 fee each (separately) became unlawful when the Fund grew into a very large fund on or about January 1, 2006.  Thereafter, through the respective filing dates of the AC and SAC, the Fund underperformed its peer funds, the S&P 500 Index, to which the Fund compared itself, and charged remarkably higher fees with a much higher expense ratio than comparable funds.  RE48; RE409, 430, 446.

Indeed, the principal Morningstar opinion piece repeatedly referenced by Defendants, by Dan Culloton, dated June 30, 2011 (which as analyzed below

_____

[1] The MO also held, incorrectly, that the AC did not allege the 12b-1 fee was excessive.  RE21.  This was flatly incorrect, and is addressed below.

- 4 -

should not be considered to be before this Court) concedes that the Fund "has had a crummy five years." DBr.52. This time period coincides almost exactly with the period of unlawfulness alleged in the AC and SAC, beginning approximately January 2006, for approximately three years and five and one-half years, respectively, through filing. Plaintiff alleges the "crummy five years" were caused by Defendants growing the Fund for their benefit and not the shareholders.[2]

Defendants argument that the Fund performed better in earlier, rolling five or ten year periods is irrelevant. DBr.19, 52. Illegality is measured independently, year by year, which is why the AC and the SAC separately set forth the Fund's fees year by year and measures them against comparable funds, both actively and passively managed, for performance, expenses, and expense ratios. The AC's charts and the SAC's numerous additional charts make this completely clear. If Defendants were correct, then no fee, for any individual year, could be unlawful, rendering §36(b) meaningless.

---

[2] Further growth in the Fund did not generate additional, material benefits to the Fund from DSA's economies of scale sufficient to offset the cost in 12b-1 fees. The only beneficiaries of this huge increase in Fund assets were the Defendants. They reaped a materially larger advisory fee – marginally, $48MM more annually -- merely based upon the increase in the Fund's size, an increase in size which the Fund annually also paid 12b-1 fees of over $140MM to finance with no benefit therefrom. RE430-33; RE73-75.

**C.     Defendants' Argument that the AC and the SAC Each Do Not Compare the Fund to a Sufficient Number of Funds Is Simply Wrong; the AC and the SAC Each Compare the Fund to As Many As 138 Other Stock Funds**

Plaintiff's PBr. addressed in detail the fact allegations of both the AC and SAC comparing the Fund to other funds.  PBr.35-46, 52-60.  Defendants pretend virtually all these detailed allegations do not exist.  DBr.51-54.  This Section only addresses Defendants' most glaring omissions and misstatements.  Plaintiff refers this Court to his PBr., and the AC and SAC for a more detailed analysis.

There are few funds the size of the Fund; Morningstar identifies only 34 "large" stock funds of one investment strategy or another.  Obviously, not all of these funds followed investment strategies similar to the Fund.  Morningstar identified a more limited number of funds comparable to the Fund.  RE56-57.  The SAC compares the Fund to the approximately one dozen Morningstar-identified funds, adding funds the AC did not address.  Obviously, the smaller the fund, the less apt the comparison.

The AC compared the Fund in detail to *eight specifically named funds*, four actively-managed and four index, in two fund families.  PBr.52; AC *passim*.  In

addition, however, the AC compared the Fund to 138 other large funds[3] (although

most were smaller that the 34 large funds in the Morningstar universe).

Concerning this bigger universe of funds, in 2008, the Fund's total net asset

weighted expense ratio was 15% more than that of this benchmark of 138 large

funds.  RE419, AC¶196.  In addition, in 2007 and 2008, respectively, the Fund's

net asset weighted expense ratio was 13.5 *times* and 24.4 *times* that of a separate

benchmark of all index funds.  RE419; 446-47; AC194-94, 355-56.  Combined

with the other allegations of underperformance and higher fees and expense ratios,

these fee comparisons sufficiently state a claim under the AC.

Concerning the 12b-1 fee, similarly in 2007 and 2008, the AC alleges that

the Fund's net asset weighted 12b-1 fee (the dollar amount of 12b-1 fees paid to

total net assets) was, respectively, 21.2% and 33.5% more than that of the same

benchmark of 138 large funds.  In 2007 and 2008, the Fund's net asset weighted

12b-1 fee was 17.57 *times* and 35.89 *times*, respectively, that of a benchmark of

index funds.  RE438-39.  The AC also compared the Fund's distribution fees per

million dollars under management to four funds for a total of four yearly

comparisons.  The Fund had the highest fees.  RE438.

---

[3] The exact number of compared large funds concerning the asset weighted
expense ratio was 138 funds.  That number was inadvertently omitted from the AC.
The SAC contains the exact same allegations and states the number of funds is
138.  RE77, 80.

The SAC expanded the comparison to eleven funds, seven actively-managed and four index, in four fund families.  The SAC contains nine charts with many different and detailed comparisons.  RE58-79.

The SAC contains the same allegations concerning the universe of the 138 largest stock funds and the universe of all index funds.  RE77-78, 80.  Concerning distribution fees per million dollars under management, the SAC compared the Fund to six funds (not four) for a total of ten yearly comparisons.  RE79.

Defendants refuse to address these facts, specifically alluding to the comparison with the 138 other stock funds as "incoherent allegations."  DBr.56-57, citing RE79-80.

In virtually every chart and separate analysis alleged in the AC and the SAC, the Fund ranks at or near the bottom in the comparison.  The Defendants neither propose additional funds that they claim are comparable; explain why the funds identified in the AC and/or SAC are not comparable (other than their incorrect analysis of the D&C fund, *infra*); and if the Fund has been compared to all reasonably comparable funds of similar size, why that comparison is legally insufficient.  The comparable funds were analyzed in detail in the PBr.  Under Defendants' analysis, either there were no comparable funds or every fund was a comparable fund.  This cannot be the case.

**D.    The District Court's Refusal to Compare the Fund With Vanguard's Actively-Managed Stock Funds Constituted Both Error as a Matter of Law and an Abuse of Discretion**

*Jones* also refutes Defendants' argument that the Fund cannot be compared to Vanguard Funds. *Jones* found there was essentially no competition in the mutual fund industry. 559 U.S. at 338, 344-45. *Jones* thus held (at 350) it was permissible to compare a defendants' fees to those of other management companies. Hence, comparing the Fund to Vanguard Funds is relevant because internally managed funds such as Vanguard "face[] no conflict in negotiating the most favorable terms it can get from the investment adviser. The prices paid by such funds accordingly provide an extremely probative benchmark of arms-length transactions." Brief for John C. Bogle as *Amicus Curiae* in Support of Petitioners in *Jones*, at 25 (filed June 15, 2009) (*available at* americanbar.org).

The District Court committed error as a matter of law and abused its discretion when it rejected out of hand the comparison of the Fund to actively-managed Vanguard funds because they have low fees, stating, and citing *Jones*, "[i]f the services rendered [by separate funds] are sufficiently different that a comparison is not probative, then courts must reject such a comparison." RE22. This analysis misapplied *Jones*. A sufficient difference precluding a comparison would be the type of mutual fund (money market versus stock) or the services each fund performs. There are no facts in the record (and there could not be) that a

- 9 -

large, actively-managed Vanguard stock fund is operated any differently than the Fund. The only difference between them is the low fees -- which is a probative difference that demonstrates illegality at the pleading stage.

### E.   Defendants' Analysis of the Dodge & Cox Stock Fund Is Fundamentally Flawed

Defendants misrepresent (DBr.26) the facts relating to the Dodge Stock Fund, incorrectly asserting that Plaintiff's analysis improperly combines advisory and 12b-1 fees (to prove their unlawfulness jointly) and that D&C has higher fees.

D&C pays broker-dealers fees without additional costs to its funds or its shareholders, meaning that all distribution and servicing expenses are paid out of its advisory fee. Accordingly, a proper comparison between the Fund and D&C is their comparative expense ratios. The Fund's expense ratio is dramatically higher than D&C's ratio. For the four years 2007-10, inclusive, the Fund's ratio was higher every year, averaging 0.875% to D&C's 0.52% -- 68% more per year. RE76-78. *Siemers* found it appropriate for plaintiff to "use higher-than-average expense ratios . . . as a proxy for excessive advisory and distribution fees." *Id*. at *57-*58. See extensive discussion, *infra*.[4]

---

[4] Defendants misrepresent Plaintiff's analysis of D&C that compares the Fund's combined advisory and 12b-1 fees to D&C's advisory fee alone. This is so because the Fund uses the 0.25% 12b-1 fee to pay servicing costs, while D&C's servicing costs come from its advisory fee alone. This analysis addresses only the
(continued…)

**F.    Defendants' Statement that Sophisticated Investors Pay the Same Advisory Fee Is a Straw Man, and Misstates Plaintiff's Case**

Defendants state that sophisticated investors in the Fund paid the same percentage advisory fee as the average investor in the Fund.  DBr.11.  This is irrelevant.  As *Jones* states, a comparison between the fees the defendant-manager charges the mutual fund and the fees the same manager charges the investors in separate, but analogous, investment programs such as a pension fund is the appropriate test.  *Jones* at 349-51.  There has been no discovery as of yet in this action on whether the Defendants charge lower fees to other investors in other investment vehicles outside of the Fund.  That the Fund itself has a separate share class for high net worth individuals is irrelevant.  Moreover, we do not know how many individuals actually qualified for this reduced fee.

**G.    Defendants' Repeated Citation to the Fund's Cheaper Front-Load Charges Is Irrelevant Because Front-Load Sales Charges Are Not Advisory or 12b-1 Fees**

Defendants deliberately confuse a front-load sales-related charge with

_____

(…continued)

legality of the Fund's advisory fee, and does not seek to find that the Fund's advisory and 12b-1 fees are jointly unlawful.  The Fund's fees are higher than D&C's fees.  In 2007, the Fund's advisory plus 12b-1 fees totaled $391 million.  The D&C fund (with more net assets) had an advisory fee of only $344.5 million.  The analysis for 2009 is similar, after adjusting the Fund's fees to account for net asset size differences.  RE65.

advisory and 12b-1 fees.  They repeatedly cite the Fund's "cheapest front-load charges," DBr.14, 52, 55, as demonstrating that the Fund's advisory and/or 12b-1 fees are very low.

Defendants' argument is a clear misrepresentation.  Advisory fees and 12b-1 fees are paid annually under annual contracts approved by the Fund's Board.  A front-load charge is by definition a one-time upfront sales charge, unrelated to each fee at issue here.  Defendants' incorrect argument here cuts against its other, correct, statement that the legality of advisory fees and 12b-1 fees must be determined on their own.[5]

### H.    The Extraordinary Growth in the Fund Shortly Before 2006 Created Diseconomies of Scale that Undermined the Fund's Ability to Obtain Even Average Returns

Defendants do not discuss the diseconomies of scale resulting from the extraordinary growth of the Fund.  As the SAC alleges, once the Fund grew larger

---

[5] Defendants also argue that because much of the 12b-1 fees are not retained by Defendants but are paid to third-party broker-dealers, such payments are not subject to legal liability.  DBr.35-36, 57.  Judge Feess' better-reasoned analysis, *In re Am. Mut. Funds Fee Litig.*, 2009 U.S. Dist. LEXIS 120597, at *119-*121 (C.D. Cal. Dec. 28, 2009), rejects Defendants' contention, stating:  "In this Court's view, [defendants'] construction of Section 36(b) cannot be squared with its fundamental objective of insuring that a fund's management does not, directly or indirectly, unfairly compensate itself at the expense of its investors. The Court therefore declines to follow [defendants'] construction of" §36(b).  The District Court also rejected Defendants' other citation (DBr.35), *Yameen*, holding that on many 12b-1 issues *Yameen* "is directly contrary to Defendants' position."  RE19-20.

than $30 billion, its performance deteriorated dramatically when measured against any comparable group of funds or indices.  RE51-52, 58-59, 73-74.  Defendants ignore the SAC's analysis against groups of eleven and 138 other large funds. Significantly, as the Fund grew, it more and more mimicked an index fund, with a R-squared of at least 98.  RE53.

Defendants misleadingly argue that the Fund's breakpoints were an appropriate fee reduction from 0.75% to 0.41% of net assets.  DBr.6  The reduction from 0.75% to 0.55% only applied to the first $500 million dollars of a $40 billion dollar fund.  Thereafter, the decrease from 0.55% to 0.425% (the Fund's assets virtually never exceeded $48 billion) is substantially less than Defendants suggest given the different breakpoint levels.

## I.    The Fee Structure of Comparable Funds Is Much Lower Than the Fund's Fee Structure

Defendants incorrectly state that the SAC compares the Fund to only four other funds.  DBr.54.

The SAC compares the advisory fee (after adjustment for differing net asset size) and expense ratio of the Fund to eleven other funds and to benchmarks of hundreds of other both large, actively-managed and index funds.  RE63-64, 76-80. The Fund's advisory fee after adjustment was the highest of seven actively managed funds, at least 12% more than the second highest fund and approximately 55% more than the average of the other six actively managed funds.  RE63-64.

- 13 -

Similarly, the Fund's expense ratio is the second highest of eight actively managed funds, trailing only Fidelity Growth, and was multiples higher than four index funds of comparable size.  RB76-77.

Moreover, as detailed earlier, the AC and the SAC compare the Fund's asset weighted expense ratio and asset weighted distribution fees to 138 large stock funds and an equally large universe of index funds.  RE419, 446-47; 438-39; 76-78, 80.

Expense ratios do not include front-load or other selling commissions. *Siemers* found it appropriate, before discovery, for plaintiff to "use higher-than-average expense ratios for certain [of defendants' funds] as a proxy for excessive advisory and distribution fees," holding that even though expense ratios include all expenses and not just advisory and distribution fees, "increases in expense ratios are nevertheless plausible indicators that advisory and distribution fees were higher than industry averages."  *Id*. at *57-*58.

### J.  The Board Reduced the Advisory Fee By Less Than One-Half of One Percent Just Two Months After the AC Was Filed

The SAC does not allege, as claimed by Defendants, DBr.12, 30, that the Board was fully informed when approving the fees.  The SAC alleges (RE82) "[t]he Board could have requested the necessary data to determine whether the advisory fees and 12b-1 fees each were excessive and disproportionate, but did not act upon same.  Even if it had the necessary data, the board did not utilize the

- 14 -

information to engage in arms length bargaining on behalf of the Fund and its shareholders."  See RE450, ¶383.

The SAC adds the allegation that the Board reduced the Fund's advisory fee by less than one-half of one percent just two months after the AC was filed.

Defendants argue that the SAC's allegation, that the Defendant-adviser "voluntarily" reduced the Fund's advisory fee at the June 2009 meeting, confirms that the Fund was appropriately sharing economies of scale with investors. DBr.56.  This is incorrect.  Defendants ignore the fee reduction was window-dressing, an immaterial and fixed amount, $750,000 per year, out of between $150 million and $225 million per year paid in advisory fees, *i.e.*, a reduction of less than one-half of one percent.  But, even that reduction was not negotiated by the Fund's supine directors; rather, it was done "voluntarily" by the adviser.  Plaintiff also alleges it was not mere coincidence that the reduction occurred just two months after the AC was filed.  RE36, 68.

K.  **Defendants Ignore Virtually Every Lower Court Decision Denying Dismissal of a §36(b) Claim; Misrepresent to This Court All But One of the Cases They Cite as Being Post *Iqbal/Twombly*, and Ignore Plaintiff's Post *Iqbal/Twombly* Decisions**

Plaintiff's PBr. analyses many well-reasoned lower court decisions denying motions to dismiss §36(b) claims.  PBr., *e.g.*, 33-35.  Defendants essentially ignore almost every one of these decisions, including *Reso v. Artisan Partners Ltd. Partnership,* 2011 U.S. Dist. LEXIS 133526 (E.D. Wis. Nov. 18, 2011) and

*Curran v. Principal Mgmt. Corp., LLC*, 2010 U.S. Dist. LEXIS 83730 (S.D. Iowa June 8, 2010) which were decided post *Iqbal/Twombly*, and ignore that *Jones* reversed the grant of summary judgment, and *Gartenberg* and *American Funds* were decided after non-jury trials.

Defendants flatly misrepresent many decisions to this Court when stating (DBr.16-17) "courts have vigilantly applied the *Iqbal/Twombly* pleading standard and frequently granted motions to dismiss §36(b) claims – including the following cases cited approvingly in *Jones*." Defendants then cite six decisions granting §36(b) dismissal motions – ***all of which were decided before both Twombly (decided May 21, 2007) and Iqbal (decided May 18, 2009).*** Moreover, *Jones* cited these decisions merely for the fact that they adopted *Gartenberg*. 559 U.S. at 344 n.4.

## II.     THE DISTRICT COURT'S DENIAL OF THE RULE 59(e) MOTION WAS AN ABUSE OF DISCRETION

Defendants use every means of subterfuge to avoid addressing the real issues on appeal. As with their analysis of the AC, Defendants misrepresent and/or ignore virtually all the detailed fact allegations in the SAC. For example, the SAC alleges (as did the AC) the Fund's asset weighted 12b-1 fee was, respectively, 21.2% and 33.5% more than a benchmark of the 138 largest stock funds. See analysis, *supra*. RE80, 419. Defendants refuse to address this fact, alluding to it as an "incoherent allegation[]." DBr.56-57.

**A.     Defendants Misrepresent the Legal Standard for a Rule 59(e) Motion, Ignoring the "Manifest Injustice" Standard**

Defendants, in reciting the standard for a Rule 59(e) motion, omit the principal ground relevant here, "manifest injustice."  Defendants only state that the district court either must be presented with newly discovered evidence; have committed clear error, or be presented with an intervening change in controlling law.  DBr.43.[6]

On the facts here, failure to grant a Rule 59(e) motion to amend where the proposed complaint clearly states a claim constitutes "manifest injustice" and an "abuse of discretion."  *Allstate Insurance Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011); *S.E.C. v. Burns*, 614 F. Supp. 1360, 1367 (S.D. Cal. 1985) (granting 59(e) motion to amend after summary judgment).  *Accord, e.g., Peterson v. Miranda*, 2012 U.S. Dist. LEXIS 149192  (D. Nev. Oct. 17, 2012), *motion to amend granted*, 2013 U.S. Dist. LEXIS 79029 (D. Nev. June 4, 2013); *McKesson Corp. v. Health Robotics, S.R.L.,* 2011 U.S. Dist. LEXIS 147476 (N.D. Cal. Dec. 22, 2011)*; see, e.g., Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003); *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 726 (9th Cir. 2000).

---

[6] Defendants' first reference to the "manifest injustice" standard appears at DBr.53 as an aside, ignoring Plaintiff's citations.  PBr.46-51.

The District Court's Order on Reconsideration ("OR") denying the Rule 59/15 motion constituted an abuse of discretion because it refused to consider the substantive merits of the SAC's additional fact allegations.  RE4-5.

Moreover, where, as here, a plaintiff had filed only one amended complaint and stated in his Rule 12 opposition papers that he desired leave to file a second amended complaint if dismissal were granted, the dismissal should have been without prejudice.  In such a circumstance, the subsequent denial of a Rule 59(e)/15 motion to correct the manifest injustice of not allowing a subsequent pleading would constitute an abuse of discretion.  *See, e.g.*, *Peterson*, 2012 U.S. Dist. LEXIS 149192; *McKesson Corp.*, 2011 U.S. Dist. LEXIS 147476; *Harris v. Amgen, Inc.*, 573 F.3d 728, 736-37 (9th Cir. 2009); *Eminence*, 316 F.3d 1048; *Chappel*, 232 F.3d at 726; *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067-68 (9th Cir. 2000).   *See also In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.,* 2011 U.S. Dist. LEXIS 103061, at *4, *9-*12 (S.D.N.Y. Sept. 13, 2011); *Brecher v. Citigroup Inc.*, 2011 U.S. Dist. LEXIS 131104, at *4 (S.D.N.Y. Nov. 14, 2011).  Defendants ignore Plaintiff's extensive discussion of the case law. PBr.46-52.[7]

---

[7] Defendants turn the English language on its head when stating that "[c]ases in which this Court ***required*** further amendments are distinguishable," citing cases concerning amendments as of right and *pro se* litigants.  DBr.46, n.24.  These are (continued…)

Further, Defendants misleadingly state (DBr.45) that *Jones* was not a change of law or intervening law.  *Jones* extended *Gartenberg*, and expressly clarified that there are other factors to consider under §36(b) beyond the six *Gartenberg* factors. In his supplemental briefs addressing *Jones*, Plaintiff noted that *Jones* "expressly expanded the relevant factors which a court should consider beyond the six listed in *Gartenberg*."  Dkts.74 at 3, 76 at 1.  The PBr. at 28 also stated that *Jones*, consonant with *Jelinek*, "substantially broadened the permissible claims under §36(b)."

Lastly, Defendants argue that Plaintiff's express request for leave to amend if the motion to dismiss were granted was "boilerplate" and "completely inadequate."  DBr.48.  First, Plaintiff's request to amend was contained in its main brief opposing the motion to dismiss, which was its **<u>only</u>** omnibus opposition to the dismissal motion.  All other briefs were supplemental briefs addressing discrete issues.  The request to amend read:  "If this Court should grant the dismissal motion, plaintiff requests leave to file a second amended complaint to cure any

---

(…continued)

decisions where this Court permitted (not required) an amendment, even though the grounds for amendment were different than here.  Plaintiff never cited these *pro se* and other decisions.

perceived deficiency." Dkt.52 at 36n.18. This is a legally sufficient request to amend. *Accord*, *e.g.*, *Peterson*, 2012 U.S. Dist. LEXIS 149192.

**B.    There Was No Delay, and Certainly No Delay That Prejudiced Defendants**

Defendants convey a grossly incorrect impression that this action has gone on for years, caused by Plaintiff's litigation tactics, and that Defendants have been prejudiced thereby. DBr.2. This is simply incorrect.

There have been no delays caused by Plaintiff. The delays that did occur were caused by Defendants repeated motion practice; independent requests from the Court for additional briefing on Defendants' arguments, which the Court ultimately rejected, and the assassination of Federal District Judge Roll, the Judge originally assigned to this case. The following chart, taken from Docket Sheet entries, RE461, shows the accurate chronology.

| Date | Event |
|---|---|
| 7/28/2008 | Action commenced |
| 4/23/09 | AC filed |
| 6/23/09 | Motion to dismiss AC filed; it asserts no standing on certain claims and suggests but does not assert no standing on all claims. |
| 1/28/10 | Chief Judge Roll requests the parties brief the "standing" issue, RE80, which they did. |
| 3/2/10 | Standing briefing concluded |
| 3/30/10 | *Jones v. Harris* decided |
| Sept & Oct 2010 | Parties submit supplemental briefing on *Jones* |
| 1/8/11 | Chief Judge Roll assassinated |
| 5/17/11 | Judge Tashima hears oral argument on Rule 12 dismissal motion |
| 6/1/11 | MO dismissing Action and Judgment both filed. Court rejects |

|  | Defendants' standing argument. |
|---|---|
| 6/15/11 | Plaintiff makes motion to reconsider/clarify §36(b) damages period contained in the MO |
| 6/29/11 | Plaintiff makes Rule 59(e)/15 motion to amend or alter judgment and for leave to file the SAC |
| 9/9/11 | Defendants file motion to take judicial notice |
| 3/19/13 | OR filed, granting Plaintiff's motion to reconsider the §36(b) damages period; granting conditionally in part Defendants' motion for judicial notice; and denying Plaintiff's Rule 59/15 motion |
| 4/16/13 | Notice of Appeal filed by Plaintiff |
| 8/16/13 | Defendants make motion to Ninth Circuit to dismiss only a small part of this Action on "standing" grounds, despite the District Court's rejection of that contention.  Appellate briefing schedule is delayed. |

Defendants claim that this case has been delayed, by Plaintiff, is thus simply disingenuous.  Discovery has not commenced, Defendants have not been prejudiced, and much of the delay has been caused by Defendants' motion practice.

Finally, Defendants suggest that the prior guidance to a plaintiff for the purpose of amending a complaint includes guidance from a defendant's own pending dismissal motion.  DBr.47.  Defendants attempt to erect a Catch-22.  Plaintiff did not know if, and on what basis, the complaint would be found deficient until the Court's Order to that effect (particularly given the new case law including *Jones*).  Indeed, additional facts supporting leave to amend may be raised for the first time on appeal.  *Cf. City of Pontiac v. UBS AG*, 2014 U.S. App. LEXIS 8533, at *39-*41 (2d Cir. May 6, 2014).

There had been no prior dismissal opinion giving plaintiff guidance.  Unlike

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, (DBr.47), where there were two

prior dismissals without prejudice before the dismissal with prejudice, 540 F.3d

1049, 1060 (9th Cir. 2008), here there was only the one dismissal, and that with

prejudice.

Plaintiff made his Rule 59/15 motion within the 30-day requirement, and

Defendants' statement, DBr.5, 48-49, that Plaintiff never submitted a proposed

SAC is incorrect.

Contrary to Defendants' misstatement, Plaintiff fully complied with Arizona

Local Rule 15.1, submitting the SAC and two "redlines" against the AC (one

redlined by computer and one by hand) as exhibits to the Rule 59/15 motion, all of

which are Record Excerpts before this Court.  RE33, 94, 209.  Defendants do not

point to anything in Rule 15.1 that required more than that.

Defendants also misstate the Record concerning the District Court's

purported comment at oral argument, which Defendants claim shows that Plaintiff

delayed in amending the AC.  PBr.46 noted that "[c]ontrary to the record below, in

both its MO and Judgment dismissing the action, the District Court stated that

"[b]ecause Plaintiff has not indicated how he could amend his Amended Complaint

to state a claim, leave to further amend is denied, and this dismissal is with

prejudice."  RE7, 26.  The District Court opinion incorrectly suggests that the

Court asked Plaintiff's counsel at oral argument on the Rule 12 motion how he would amend the complaint.  Plaintiff's counsel was never asked that question by the Court.

The Rule 59(e)/15 motion included a Declaration for Plaintiff by Daniel W. Krasner, Esq. that stated Mr. Krasner had listened to the electronic copy of the oral argument (that was available to counsel) and that no such question was asked by the District Court.  RE31-32.  The District Court did not address the Declaration in its OR deciding the Rule 59/15 motion.

Defendants do not dispute the electronic recording of the oral argument that Mr. Krasner listened to when preparing his Declaration, but merely argue that Plaintiff did not preserve the matter for review under FRAP 10(c).  This is incorrect because §10(c) does not apply where the hearing is recorded.  Moreover, the contents of the oral argument is not a separate issue to be appealed, but one of the facts relevant to the issue of delay under the Rule 59/15 motion, and it is before this Court.  The MO and Judgment are incorrect.

**C.      None of the Morningstar Articles Are Before This Court; Not All Were Contained in the Judicial Notice Motion and the District Court Granted that Motion Only in Part and Conditionally, and Defendants Did Not Meet the Conditions**

Defendants' misrepresent the articles they submitted to the District Court opposing the Rule 59/15 motion; the articles contained in their subsequent judicial notice motion, and the District Court's ruling on that motion.

Defendants in their Rule 59/15 opposition brief cited only one Morningstar article, dated June 30, 2011.  Plaintiff objected to that article on two grounds -- it was dated after the SAC was filed and, more importantly, because it was an opinion (by a named analyst) and not fact.  Dkt.91 at 10, citing *Curran*, 2010 U.S. Dist. LEXIS 83730, at *32-*36.

Defendants' subsequent judicial notice motion, made three months after Plaintiff's 59(e)/15 motion, sought to have the District Court take notice of thirteen other Morningstar opinion articles written by named analysts.  Defendants misrepresented the reason for their motion, claiming, Dkt.98 at 2, it was because Plaintiff, in his Rule 59/15 reply brief, had objected to Defendants' citation of the June 30, 2011 article *only* because it concerned a time period not relevant to the SAC.  This was untrue.  Notably, the June 30, 2011 article was **<u>not</u>** included in Defendants' judicial notice motion.

The District Court, recognizing the gap in Defendants' logic, granted Defendants' judicial notice motion only "for the sake of a complete record [] [holding] that the Court *will allow the Morningstar reports to be filed as part of the record as a proffer, to the extent they may be referenced in Plaintiff's Proposed Amended Complaint* (Dkt.84, Ex. 1) *and* Defendants' Opposition (Dkt.86) to Plaintiff's Rule" 59(e)/15 motion.  RE5-6 (emph. added).  In fact, they

were not referenced in either document, and the District Court stated it did not rely

on the Morningstar articles.  *See* RE5-6.

The June 30, 2011 article – the main article Defendants have repeatedly

cited in opposition to the SAC – was outside the relevant time period, not

referenced in the SAC, and not even included in their judicial notice motion.  None

of the thirteen other articles contained in Defendants' judicial notice motion were

either referenced, directly or indirectly, in the SAC and none were referenced in

Defendants' opposition to the Rule 59/15 motion.  Indeed, the SAC does not cite

any Morningstar articles.  Consequently, Defendants did not meet the District

Court's conditions; they impermissibly filed the Morningstar reports as part of the

Record, and none of the fourteen Morningstar articles should be considered to be

in the Record here.[8]

The District Court's conditional grant of judicial notice also was an abuse of

---

[8] Even if part of the Record, the June 30, 2011 article contains fundamental
criticisms of the Fund supporting the conclusion that the District Court's two
rulings constituted error.  It states the Fund's Board does not have an "independent
chairman," SER79, and that the Fund has "poor results."  SER77. The other
Morningstar articles cited by Defendants in their DBr. are irrelevant because their
time period encompasses little of the period of alleged unlawfulness.

Moreover, Defendants' approximately 900 pages of Supplemental Record Excerpts
contain hundreds of pages of briefs and memoranda that should not have been
submitted.  FRAP 30(a)(2), Circuit Rule 30-1.5.

discretion under Federal Rule of Evidence 201 (judicial notice should be denied where the "facts" are opinions subject to "reasonable dispute").  Here, the "facts" proffered by Defendants are in fact "opinions" by named authors, not mathematically-calculated data.  *E.g., Baker v. Barnhart,* 457 F.3d 882, 890-92 & n.4 (8th Cir. 2006); *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 975-76 (9th Cir. 2006); *U.S. v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).[9]

## III. DEFENDANTS' ARGUMENTS ALLEGING SO-CALLED ALTERNATIVE GROUNDS FOR AFFIRMANCE ARE NOT BEFORE THIS COURT

Defendants assert so-called alternative grounds for affirming the dismissal below.  Defendants argue that there is no relation back, the §36(b) damages period is shorter than Plaintiff alleged, and 12b-1 fees are "expressly exempt from liability" under §36(b) as a sales load.  DBr.1-2, nos. 4, 7; 39-42, 57-60.

Defendants' arguments are a smokescreen.  Defendants actually request that this Court reverse the District Court, and enlarge Defendants' rights and limit Plaintiff's rights, where Defendants did not file a cross-notice of appeal.

---

[9] The SAC cites Morningstar data (not opinion articles) for its R-squared measure (a mathematical formula); the percentage of the Fund's assets in its ten largest holdings; the Fund's five-year "star" rankings (again, a mathematical formula using percentage performance, deviation from the norm, and concretely measured charges, loads and fees), and categories of funds based upon dollar size and investment strategy.  RE53, 55-57 (SAC ¶¶97, 107, 109 &n.2, 115-20).

Defendants made these arguments to the District Court, where they implicitly conceded that every §36(b) decision has held 12b-1 fees are subject to legal review under §36(b) and that no decision has ever upheld Defendants' assertion.

The District Court expressly rejected Defendants' "exempt from liability" argument, holding that Defendants' principal citation, *Yameen*, "is directly contrary to Defendants' position." RE19-20.

Concerning the relevant time period, the District Court expressly rejected Defendants' relation back argument. RE16-17. While adopting Plaintiff's analysis of the §36(b) damages period, the District Court ruled in part for Defendants. RE16-19, 19-20. Thereafter, Plaintiff moved for reconsideration/clarification of this ruling, and the District Court granted Plaintiff's motion, finding the end date it had stated was simply an error to be corrected. RE2-3.

Defendants' did not file a cross-notice of appeal on the relation back, length of the damages period, or liability exemption, issues. Where a party seeks on appeal to enlarge its rights despite prevailing below on its motion, or lessen the rights of his adversary, a cross-appeal must be filed. *National Surety Corp. v. Stargem Holland, B.V.*, 1991 U.S. App. LEXIS 23196, at *4-*6 (9th Cir. Oct. 1, 1991) (cross-appeal required; this is not merely "'an attack upon the reasoning of the lower court,'" as concerns its analysis, "but is an attack on the judgment").

Having not cross-appealed, Defendants nevertheless argue that this Court should provide them with an advisory opinion on the damages period because the decision states the damages period goes through the "trial, if any."  Indeed, the District Court's phrasing through the trial "*if any*" in conjunction with noting the possibility of a reversal on appeal, demonstrates that it understood the conditional nature of its holding.  But, since Defendants are asking this Court to reverse a District Court decision that will enlarge Defendants' relief granted while lessening Plaintiff's relation back and damages period rights, a cross-appeal was required.[10]

Similarly, after its rejection by the District Court, a holding, now, that 12b-1 fees are "exempt from liability" also enlarges Defendants' rights while lessening Plaintiff's rights.  Nevertheless, if no cross appeal was required, the liability exemption argument should be rejected for the reasons stated in the MO19-20 and in Plaintiff's Brief opposing dismissal.  Dkt.52 at 24-26.

## IV.    DEFENDANTS' STANDING ARGUMENT SHOULD BE REJECTED

In their dismissal motion, Defendants argued that Plaintiff lacked standing to pursue part of the 12b-1 fee claim.  Judge Roll requested separate briefing on that issue.  The MO rejected Defendants' argument, principally based upon District

---

[10] Defendants' analysis nevertheless should be rejected based on the District Court's analysis in the MO and Dockets 52, 82 and 95, Plaintiff's motion to dismiss opposition, and motion and reply for reconsideration and/or clarification of §36(b)'s damages period.

Judge Feess' analysis in *In re Am. Mut. Funds Fee Litig.*, 2009 U.S. Dist. LEXIS 120597, at \*111-\*114.  RE13-16.

Defendants made an identical, limited motion to dismiss to this Court, which denied the motion without prejudice to Defendants' right to raise it in their opposition brief, App. Dkt. 11, which they have done.  DBr.30-31.[11]

This Court should reject Defendants' standing argument based upon the existence of only one portfolio of assets and the common, overlapping services and activities Defendants performed, the MO's analysis, Judge Feess' analysis and the decisions cited therein, Dkt.64 below (Plaintiff's standing brief) and his opposition in this Court (Dkt. 9) to Defendants' standing motion.[12]

---

[11] In contradistinction to their arguments concerning a limitation on the §36(b) damages period and an SEC "exempt[ion] from liability," this standing issue does not require a cross-appeal.

[12] Defendants' citations at DBr.31 are inapposite.  In *Gollust v. Mendell*, 501 U.S. 115, 125-26 (1991), the Supreme Court held plaintiff retained standing, stating standing exists where plaintiffs have a "financial stake," even if "indirect" or "attenuated."  *Glanton v. AdvancePCS, Inc*., 465 F.3d 1123, 1125 (9th Cir. 2006) concerns claims that a pharmacy benefits management company charged plaintiffs' (non-defendant) health plans too much for prescription drugs, which in turn, resulted in the plans charging plaintiffs excessively high fees.  Plaintiffs argued that the suit would redress their damages because if the management company charged the plans less, the plans would pass along the savings to plaintiffs.  The court rejected the theory.  In *Kasilag v. Hartford Inv. Fin. Servs., LLC*, 2012 U.S. Dist. LEXIS 178234 (D.N.J. Dec. 17, 2012) the lower court dismissed the claim that a Class A shareholder might be injured by excessive Class B distribution fees, but did so without prejudice, even though it was the defendant's second dismissal (continued…)

**V.     CONCLUSION**

Concerning the §§36(b) and 48(a) claims,[13] both the District Court's grant of the motion to dismiss and its denial of the 59(e)/15 motion should be reversed because both the AC and SAC sufficiently stated claims.  The case should be remanded for further proceedings on the merits.

Dated:  May 9, 2014

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By:  /s/Robert B. Weintraub
Daniel W. Krasner
Robert B. Weintraub
270 Madison Avenue
New York, NY 10016
Telephone (212) 545-4600
Attorneys for Plaintiff-Appellant

746348v15

_____
(…continued)

motion, stating:  "[w]hile this Court could certainly speculate as to how" a Class A shareholder might be injured, "such speculation would be improper."  *Id*. at * 28. Here, there is no need for speculation, given the facts alleged in both complaints.

[13] Although DBr.42 includes a heading that Plaintiff waived the appeal of his §48(a) control person liability claim, Defendants make no such argument therein. Plaintiff noted his appeal of the §48(a) dismissal in his PBr. at 61.  As the MO found, if Plaintiff's §36(b) claim were to survive, then his §48(a) claim survives. MO19.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify, pursuant to Fed.R.App.P. 32(a)(7)(C) and Circuit Rule 32-1, that

the foregoing brief is proportionately spaced, has a typeface of 14 points, and

contains 6,963 words.

Dated this 9th day of May, 2014.
New York, New York

<u>/s/Robert B. Weintraub</u>
Robert B. Weintraub, Esq.

| 9th Circuit Case Number(s) | 13-15742 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) May 9, 2014 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/Robert B. Weintraub

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)